FILED
AUG 29 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name  __Johnson__   __Lamont__   __Sterling__
       (Last)        (First)      (Initial)

Prisoner Number __V-01262__

Institutional Address __Pelican Bay State Prison P.O. Box 7500 Crescent City, CA__

UNITED STATES DISTRICT COURT

E-filing

NORTHERN DISTRICT OF CALIFORNIA

__Lamont Sterling Johnson__
Full Name of Petitioner

C 07 4483  SI  (PR)

Case No. (To be provided by the clerk of court)

vs.

__Robert Horel - PBSP__    PETITION FOR A WRIT OF HABEAS CORPUS
Name of Respondent
(Warden or jailor)

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

1

petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

### Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

### A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

    (a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

    Court: __Contra Costa Superior Court__   Location: __Martinez, CA__

    (b) Case number, if known __962195-4__
    (c) Date and terms of sentence __7-18-03, LWOP__
    (d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) (Yes)  No

    Where? __Pelican Bay State Prison__, __Crescent City CA__
    (Name of Institution)          (Address)

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

    __PC 187 w/ Special Circumstance (robbery-murder) w/__
    __PC 211/212.5 - 2nd Degree Robbery__

3. Did you have any of the following?

Arraignment: Yes X No __   Preliminary Hearing: Yes X No __   Motion to Suppress: Yes __ No X

3

4. How did you plead?

Guilty _____   Not Guilty _X_   Nolo Contendere _____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

Jury _X_   Judge alone _____   Judge alone on a transcript _____

6. Did you testify at your trial? Yes _X_ No __

7. Did you have an attorney at the following proceedings:

(a) Arraignment       Yes _X_       No __
(b) Preliminary hearing   Yes _X_   No __    N/A
(c) Time of plea      Yes _N/A_    No __
(d) Trial             Yes _X_      No __
(e) Sentencing        Yes _X_      No __
(f) Appeal            Yes _X_      No __
(g) Other post-conviction proceeding   Yes __   No _X_

8. Did you appeal your conviction? Yes _X_ No __

(a) If you did, to what court(s) did you appeal?

Court of Appeal       Yes _X_   No __   2003           Conviction Affirmed
                                        (Year)         (Result)

Supreme Court of
California            Yes __    No __   2006           Petition For Review Denied
                                        (Year)         (Result)

Any other court       Yes __    No _X_  _____      _____
                                        (Year)         (Result)

(b) If you appealed, were the grounds the same as those that you are raising in this petition?          Yes _X_   No __

(c) Was there an opinion?   (Yes)   No __    unpublished
                                             # A103544

(d) Did you seek permission to file a late appeal under Rule 31(a)?
                            Yes __    (No)

4

If you did, give the name of the court and the result:

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?   (Yes)    No __

5

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

(a) If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I. Name of Court **First District Court of Appeal**

Type of Proceeding **Writ of Habeas Corpus**

Grounds raised (Be brief but specific):

a. **IAC for Failing to call Forensic Expert**

b. **Judicial Misconduct for Denigrating Counsel Closing argument**

c. _____

d. _____

Result **Pending** Date of Result _____

II. Name of Court _____

Type of Proceeding _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result _____ Date of Result _____

III. Name of Court _____

6

Type of Proceeding _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result _____ Date of Result _____

    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?    Yes ☒  No __

_____

(Name and location of court)

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you need more space. Answer the same questions for each claim.

Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: _See Attached for Claims 1-16_

7

Supporting Facts: _____

_____

_____

Claim Two: _____ See Attached, _____

Supporting Facts: _____

_____

_____

Claim Three: _____

Supporting Facts: _____

_____

_____

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

_____

_____

_____

8

**Claim # 1**
The Government's destruction of exculpatory evidence violated Petitioner's Sixth Amendment right to a fair trial and to present a defense and Fourteenth Amendment right to Due Process.

**Supporting Facts:** Shortly after the homicide, the East Bay Regional Park Police Department obtained information about a white, blond suspect. (Both petitioner and co-defendant Lemar Harrison, who was tried separately, are African American.). This information came to light after Petitioner was convicted in April of 1999. Petitioner moved for a new trial. During an evidentiary hearing regarding the suppressed information about the third suspect, it was discovered through the efforts of a defense forensic computer expert that Detective Tim Anderson had attempted to erase a press release about the third suspect from the Department's computer, only a few hours after information about the third suspect had first been conveyed to the prosecution by co-defendant Harrison's counsel. Moreover, it was found that the Department had, in direct disobedience of a court order to preserve all computer files, sent the hard drive with the original press release to be dismantled for salvage. In December of 2000, the trial court granted Petitioner a new trial, based on governmental misconduct. (In addition to the information about the blond suspect, the trial court found that there was other exculpatory information in possession of the prosecution team that had been improperly been withheld from the defense, including evidence that the victim was in possession of a large amount of cash that was never recovered.) Despite extensive investigation, the defense never found out the source of the information about the third suspect, although several witnesses, including a retired detective recalled that Anderson and other officers had discussed a blond suspect during the early stages of the investigation.

**Claim # 2**
The trial court's refusal to give jury instructions requested by the defense regarding the suppression and destruction of evidence by the prosecution violated Petitioner's Sixth Amendment right to present a defense and Fourteenth Amendment right to due process.

**Supporting Facts:** Despite the extensive evidence of suppression and misconduct by the Government, the trial court denied Petitioner's special instructions that would have informed the jury that 1) it could draw an adverse inference from the prosecution's destruction of evidence; 2) presume that the destroyed evidence was unfavorable to the prosecution's case and 3) that the destruction of evidence could be used as a circumstance to show the Petitioner was not guilty.

**Claim # 3**
The prosecution's use of false testimony and presentation of a theory inconsistent with that presented in the co-defendant's trial violated Petitioner's Sixth Amendment right to a fair a trial and Fourteenth Amendment right to due process.

**Supporting Facts:** Paul Stelly was an inmate who claimed to have spoken with both co-defendant Lemar Harrison, and Petitioner when Harrison and Petitioner were awaiting trial.

Stelly was called as a witness by Harrison at Harrison's trial and Stelly testified that Petitioner had admitted killing the victim and that he acted alone. Deputy DA David Brown aggressively attacked Stelly's testimony and argued to the court that Stelly was a liar because Harrison was the actual killer. Brown specifically stated that there was no evidence that anyone other than Harrison fired the gun. At Petitioner's trial, over Petitioner's objection, Brown called Stelly as a witness and argued to the jury that Stelly was credible in support of the theory that Petitioner was the actual shooter. Moreover, the defense provided information to the prosecutor that showed deliberate falsehoods made by Stelly, including the forging of a letter written to the court in Stelly's own case, but the prosecution presented his testimony anyway.

**Claim# 4**
The trial court's denial of an evidentiary hearing on the prosecution's use of false testimony and inconsistent theories violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:**
DDA Brown tried to justify his change in theories by telling the court that Stelly's testimony at Harrison's trial was new information to him that he learned only when Stelly testified. The trial court denied Petitioner's request for an evidentiary hearing so that sworn testimony could be taken on the veracity of Brown's claim.

**Claim # 5**
The trial court's exclusion of the prosecutor's admissions in the co-defendant's case violated Petitioner's Sixth Amendment right to present a defense and Fourteenth Amendment right to due process.

**Supporting Facts:** After the trial court denied Petitioner's motion to exclude Stelly's testimony and request for an evidentiary hearing, Petitioner unsuccessfully sought to introduce, from co-defendant Harrison's trial, DDA Brown's cross-examination of Stelly and argument that Stelly was not credible and that Harrison was the sole shooter under the theory that these statements were admissions of a party opponent.

**Claim # 6**
The trial court's erroneous admission of evidence regarding gunshot residue testing in the prosecution's rebuttal when it was not introduced in the case-in-chief, violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:** The prosecution had evidence that one particle of gunshot residue was found on the right cuff of petitioner's shirt. In their case-in-chief, the prosecution did not introduce this evidence, although the prosecution did present evidence that Petitioner had handled a gun many hours after the shooting. Only after Petitioner presented his case, did the prosecution call a witness to testify about the gunshot residue testing

**Claim # 7**
The trial court's erroneous admission of evidence showing the facts underlying Petitioner's escape attempt for impeachment purposes violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:** After petitioner was convicted at the first trial, he was involved in an escape attempt. The prosecution sought to introduce this evidence to show consciousness of guilt. As there were alleged threats against a jail deputy during the escape attempt, the trial court ruled that no evidence of threats would be allowed because the probative value was outweighed by the prejudicial impact. The parties agreed to stipulate that Petitioner was involved in an attempted escape. When it appeared that Petitioner would testify, the prosecutor sought to introduce the circumstances of the escape as impeachment. The prosecution refused to stipulate and the trial court permitted two guards to testify about the circumstances of the escape, including the threats.

**Claim # 8**
The trial court's erroneous admission of testimony by a gang expert when there were no gang allegations charged, or evidence other than the expert's testimony indicating a gang connection to the crime, violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:** Over Petitioner's objection, ex-police officer Sue Ellen Todd was qualified as a gang expert and testified that Petitioner and co-defendant Harrison were members of a gang called the AKP. Todd further testified that the AKP gang was involved in shootings, robberies and drug sales. Other than the testimony of Todd, there was no evidence that the crime was gang related. Further, the prosecution did not charge Petitioner with gang crimes or enhancements. Equally as troubling, Todd had no direct knowledge of Petitioner or Co-defendant Harrison, could name no specific crimes that she investigated involving AKP members and primarily based her opinion about the AKP's activities from reading one police report.

**Claim # 9**
The prosecutor's misstatement of law regarding the definition of major participant in regard to the felony-murder special circumstance, violated petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:** During closing argument, the prosecutor incorrectly equated "major participant" as required for the special circumstances finding with aiding and abetting and the court, relying on a depublished case overruled Petitioner's objection to the

**Claim # 10**
The trial court's instruction to the jury that the jury need not unanimously agree on a theory of murder violated Petitioner's Sixth and Fourteenth Amendment right to a unanimous jury.

**Claim # 11**
The trial court's failure to recuse the prosecutor because of a conflict of interest, violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:** Based on facts developed during the three new trial motions and several hearings on the discovery violations, the court made findings that DDA David Brown improperly withheld discovery from the defense. Moreover, DDA Brown directly disobeyed court orders to attempt to remedy the discovery violations. In addition, Petitioner presented to the jury evidence of the state's misconduct to show the unreliability of the state's evidence. At least two of these witnesses, Elizabeth Wallace and Chief Norman Lapera testified that DDA Brown had been made aware of the information of the blond suspect, which Brown repeatedly denied. Based on DDA Brown's personal hostility towards Petitioner, defense counsel and the court, which impaired his ability to meet his ethical obligations as a prosecutor and because his credibility was a material issue that the jury needed to assess, Petitioner moved to recuse DDA Brown from Petitioner's case.

**Claim # 12**
The cumulative effect of the evidentiary and instructional errors set out above violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment right to due process.

**Supporting Facts:** The numerous discovery violations, erroneous evidentiary rulings and faulty instructions, set out above, as well a prosecution by a conflict-ridden deputy District Attorney resulted in Petitioner receiving a constitutionally unfair trial.

**Claim #13**
Contra Costa County's systematic exclusion of African-Americans from Petitioner's jury venire, violated his Sixth Amendment right to a jury drawn from a representative cross-section of the community and Fourteenth Amendment right to due process.

**Supporting Facts:** For many years, Contra Costa County has had a severe problem with the under-representation of African-Americans on criminal juries in proportion to the County's overall African-American population. This issue has been the subject of several studies and discussed in several published opinions. While courts have found that statistically African-Americans are under-represented on juries, they have failed to find constitutional violations in the County's jury selection system. By the time of Petitioner's trial in 2003, there was no evidence that the County had taken any measures to correct the problem of under-representation of African-Americans that had gone on for at least twenty years. Therefore, the jury venire from which Petitioner's jury was drawn, contained a disproportionately low number of African-Americans, and the County having been on notice for many years that there methods of jury selection result in too few African-American jurors, rises to the level of constitutional violation.

**Claim# 14**
California's special circumstance statute, in particular the felony-murder provision, is overbroad, causing Petitioner's sentence to be unconstitutional under the Eighth Amendment prohibition against cruel and unusual punishment and the Fourteenth Amendment guarantees of equal protection and due process.

**Claim # 15**
The trial court committed misconduct by reacting negatively, in full view of the jury, to defense Counsel's closing argument, and then refused to allow Petitioner to make an adequate record of the misconduct in violation of Petitioner's Sixth Amendment rights to a fair trial and effective counsel and Fourteenth Amendment right to due process.

**Supporting Facts:** When counsel for Petitioner was arguing to the jury about the significance of the blond suspect and the prosecution's suppression of the information, the prosecutor objected that counsel was arguing facts not in evidence. The trial court interjected, telling the jury that they could consider any reasonable interpretation of the evidence. But what was alarming was trial court's demeanor and attitude when addressing the jury. The judge rose part way out of his chair, leaned forward, and sneered when enunciating the word "reasonable, " the unambiguous message to jury being that the court found counsel's argument to be ludicrous. Petitioner attempted to make a record and requested to present testimony from persons in the courtroom who had witnessed the court 's denigration of defense counsel's argument. The court refused to allow such testimony stating that it had done nothing improper and that any testimony from defense witnesses on the issue would be biased and therefore of no value.

**Claim # 16**
Petitioner's Sixth Amendment right to effective assistance of counsel and Fourteenth Amendment right to due process was violated by trial counsel's failure to call to testify a defense forensic expert who would have impeached statements made by co-defendant Harrison about the circumstances of the shooting.

**Supporting Facts:** Statements made by co-defendant Harrison describing the crime were introduced by the prosecution. These statements directly contradicted Petitioner's testimony and described Petitioner's actions and location in relation to the victim. The defense had retained Dr. John Thornton to examine the crime scene. Based on Dr. Thornton's analysis, in particular the location of the casings, the crime could not have occurred as described by Harrison. Thornton was never called as a witness(See Declaration of Lindat Fullerton)

1

2    I, Linda Fullerton, declare:

3    I was the trial attorney for Lamont Sterling Johnson.

4    During the preparation to the trial, I retained John Thorton, from Forensic Analytical. Dr. Thorton went to the crime scene, and, by comparing the testimony from Lemar Harrison, at his trial, with the location of the shell casing which had been fired from the weapon that caused the killing, and which had been collected by East Bay Regional Police, concluded that the shooting could not have occurred as Lemar Harrison testified, because the shell casings were too far away from the alleged location of the shooting. The casings could not have rolled from the position which Lemar Harrison claimed Lamont Johnson fired, nor could they have been accidently kicked to the location where the casings were found.

12   I did not call John Thorton to testify to this, and I did not have a strategic reason for failing to call John Thorton for this purpose.

14   I declare under penalty of perjury that the forgoing is true and correct. Executed this 29th day of August, 2007.

*Linda Fullerton*
LINDA FULLERTON

- 1 -

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

U.S. v. Cooper (9th Cir. 1993) 983 F.2 928
P v. Zamora (1980) 28 Cal.3d 88    P v. Merritt (1993) 19 Cal.App.4th 1573
In re Sakarias (2005) 35 Cal.4th 140

Do you have an attorney for this petition?    Yes ___ No X

If you do, give the name and address of your attorney:

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on X 8/23/07
Date

X _____
Signature of Petitioner

(rev. 5/96)

9